IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN F. FENNER, : | |
| : | |
| Petitioner : | |
| : | |
| v. : | CIVIL NO. 4:CV-13-1245 |
| : | |
| WARDEN EBBERT, : | (Judge Brann) |
| : | |
| Respondent : | |

**MEMORANDUM**

October 31 , 2014

**Background**

Darren F. Fenner, an inmate presently confined at the Canaan United States Penitentiary, Waymart, Pennsylvania (USP-Canaan), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Named as Respondent is USP-Canaan Warden Ebbert.  Fenner's pending action does not challenge the legality of his criminal conviction or the resulting sentence.   Rather, Petitioner seeks relief with respect to sanctions imposed against him as the result of an institutional disciplinary hearing.

Petitioner states that on August 25, 2012, Correctional Officer Turner conducted a search of a cell which he occupied along with Inmate Christopher

Martin. Fenner acknowledges that he was assigned to the lower bunk. See Doc. 1-2, p. 1. As a result of the cell search, five (5) wrapped plastic pouches containing a white substance were confiscated from the lower bunk.[1] An initial field test conducted by Lieutenant Granville on the confiscated white substance was positive for amphetamine. A second field test yielded the same result. However, "[s]ubsequent testing <u>failed</u> to substantiate a positive result for illicit substances." Id., p. 2.

As a result of the confiscation, Petitioner was issued an institutional misconduct which charged him with possession of any narcotics, marijuana, drugs, alcohol, intoxicants or related paraphernalia not prescribed (a Code 113 offense) . See Doc. 1, p. 3. Following an institutional disciplinary hearing, the presiding Disciplinary Hearing Officer (DHO) determined that based upon the evidence presented Fenner was guilty of a lesser charge (Code 305) possession of anything not authorized. The DHO imposed sanctions which included a thirteen (13) day loss of good time credit. Fenner pursed an unsuccessful administrative appeal.[2]

In his pending action, Petitioner raises two arguments. First, Fenner

---

[1] Petitioner asserts that the pouches contained a moist, white, paper-like substance.

[2] Respondent concurs that Petitioner has exhausted his available remedies within the Bureau of Prisons (BOP).

contends that there was insufficient evidence to support the finding of guilt reached by the DHO. Fenner explains that the confiscated material was simply toilet paper which is made available to all inmates. Petitioner notes that he testified before the DHO that he used a mixture of toilet paper and water to make multiple ear plugs. Second, Petitioner claims that because the DHO changed the facts and findings, under BOP regulations, specifically 28 C.F.R. § 541.10, the incident report should have been changed to charge Petitioner with a Code 305 offense. Since the DHO failed to do so, Fenner concludes that his due process rights were violated. As relief, the Petition seeks expungement of the misconduct charge.

Respondent asserts that the Petition should be dismissed as meritless since Petitioner was afforded due process and "because there was sufficient evidence to support the DHO's conclusion that Fenner was in possession of unauthorized items." Doc. 6, p. 1.

**Discussion**

Habeas corpus review under § 2241 "allows a federal prisoner to challenge the 'execution' of his sentence." Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005). A habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison.

Preiser v. Rodriguez, 411 U.S. 475 (1973), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir. 1993). Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

The United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding. Wolff noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the United States Supreme Court held that a prisoner facing a loss of good time credits is entitled to some procedural protection. Id. at 563-71.

A subsequent United States Supreme Court decision, Sandin v. Conner, 515 U.S. 472, 480-84 (1995), reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits. See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). Since Petitioner was undisputably sanctioned to a loss of good time credits which adversely

4

affected the duration of his ongoing federal confinement, this claim is properly raised in a § 2241 petition.

<u>Wolff</u> set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id</u>. An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985). In that case, the United States Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

There is no claim by Petitioner that he requested, but was denied the opportunity to be provided with a staff representative. On the contrary, the undisputed record provides that when offered the option of having staff representation, Petitioner accepted. <u>See</u> Doc. 6-1, p. 60. Thereafter, Bindery Machine Operator Foreman McIntosh appeared on Petitioner's behalf.

Fenner also does not assert that the presiding DHO was biased. It is also undisputed that the DHO issued a detailed written decision explaining the reasoning underlying the finding of guilt. See id. There is no argument by Petitioner that he was denied the opportunity to call witnesses or, submit supporting documents as contemplated under Wolff. Rather, it is undisputed that Petitioner's request to call his cell mate, Inmate Martin, as a witness was granted. Furthermore, Petitioner also gave his own testimony.

Given the liberal treatment afforded to pro se filings, Petitioner's contention that because the DHO's decision found him guilty of a different charge, under § 541.10, the incident report should have been changed to charge Petitioner with a Code 305 offense arguably asserts that he was not afforded with the amount of advance written notice required under Wolff.[3]

The BOP has specific guidelines for inmate disciplinary procedures. Prohibited acts are categorized according to the severity of the conduct. Code level 100s offenses are deemed to be of the greatest severity while Code 300 offenses fall within the moderate category. See 28 C.F.R. § 541.10, et seq.

28 C.F.R. § 541.8 (a)(2), which sets the procedures to be followed in BOP

---

[3] Petitioner asserts that BOP regulations provide that if a DHO determines that a prisoner has committed a prohibited act other then the act charged those findings should be recorded and the incident report should be changed.

inmate hearings before a DHO, provides in relevant part that a DHO can make a finding that the inmate committed the prohibited act charged, "and/or a similar prohibited act(s) as described in the incident report." Respondent acknowledges that Petitioner was initially charged with a Code 113 offense for possession of narcotics based on the confiscation of five pouches containing a white substance which were found under his mattress.[4] It is also undisputed that Petitioner testified that the white substance was ear plugs that he made from a mixture of toilet paper and water. The Respondent also admits that there was documentation presented to the DHO showing that the toilet paper "produced a false positive result for amphetamines." Doc. 6, p. 2.[5]

Upon being presented with that evidence, the DHO did not dismiss the Code 113 charge and direct that the misconduct be rewritten as a Code 305 charge. Rather, the DHO elected to amend the charges, from a Code 113 offense of the greatest severity to the lesser Code 305 charge, a moderate level offense of possessing something not authorized.

Thus, this is not a case where a prisoner was found guilty of a greater

---

[4] The search which led to the confiscation was prompted by an anonymous tip. See Doc. 6-1, p. 52.

[5] A written memorandum from SCI-Caanan Lieutenant Gintz states that "the items found in Fenner's possession returned a false positive for amphetamines" when tested on August 30, 2012. Doc. 6-1, p. 53

offense than the one originally charged. The Petitioner was provided with sufficient notice at all pertinent times that his possession of the wrapped plastic pouches was deemed to be sanctionable misconduct. There is also no claim that Petitioner would have called additional witnesses or presented other evidence if the charge were rewritten. Since both charges were clearly based on possession of the same substance, the amendment of the charges by the DHO was acceptable under the provisions of § 541.8 (a)(2), which allows a DHO to make a finding that the inmate committed a similar prohibited act described in the incident report.

Even if BOP regulations warranted the rewriting of the charge, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994)(in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief). See also Torres, 292 F.3d at 150 ("the focus must be on the nature of the deprivation").

Since Petitioner was clearly given sufficient notice that the charged misconduct was based on his possession of five pouches containing a white

substance, Fenner has not established any prejudice by the decision of the DHO to make an amendment of the charge which favored the Petitioner.  See Hudson v. Zickefoose, 2010 WL 4746220 * 3 (D.N.J. 2010)(prisoner has "no due process right to notice as to any specific administrative sanction he might face if his violation gets detected.").   Pursuant to the above discussion, this Court is satisfied that Petitioner was afforded all of his mandated Wolff due process protections.

In regards to Petitioner's claim that the DHO's finding of guilt was not sufficiently supported by the evidence as required by Hill, a federal court has no duty to independently weigh the evidence, but only to see that there was some evidence or basis in fact to support the finding of guilt.  Hensley v. Wilson, 850 F.2d 264 (6th Cir. 1988).  The findings in a disciplinary hearing are not arbitrary or capricious if there exists a basis in fact to support a disciplinary hearing officer's findings.  Edwards v. White, 501 F. Supp. 8 (M.D. Pa. 1979).

Petitioner's remaining claim is that under Hill some evidence requirement was not satisfied.  It is undisputed that the DHO's decision concluded that Petitioner was in possession of unauthorized items, namely homemade earplugs. The gist of Fenner's Hill related argument is that he was only found to be in possession of institutionally issued toilet paper.

A written memorandum signed by Correctional Officer Turner reported that

when the cell search was initiated, Fenner was alone in the cell, stood up and took two homemade earplugs out of his ears and exited with them.  See Doc. 6-1, p. 51.  Turner adds under the bottom bunk mattress he found five cellophane baggies, four of which were "solid rock hard" and one of which was soft.  Id.

It is somewhat troubling that Turner did not issue Petitioner a misconduct charge based upon officer's admitted observation that Fenner was in possession of homemade ear plugs.  Of course, it is unclear as to whether the officer made an immediate determination that the pouches under the mattress were the same items as the ear plugs being worn by Fenner.

Contrary to Petitioner's assertion, this case involves more than just possession of toilet paper.  Rather, it is undisputed that the toilet paper was part of a mixture concocted by Fenner which was then fashioned into homemade ear plugs.  Under Code 305 prisoners are prohibited from making or altering any items.  In addition, the retention of homemade items is considered contraband. See  Patel v. Zenk, 447 Fed. Appx. 337, 339, n. 2. (3d Cir. 2011)("Code 305 prohibits the "[p]ossession of anything not authorized for retention or receipt by the inmate and not issued to him through regular channels.")[6]  Fenner admittedly

---

[6] The Court in Patel also noted that a Code 108 violation is a disciplinary infraction of the greatest severity while a Code 305 offense is only a moderate offense.

altered toilet paper into homemade ear plugs and then retained those items by placing them under his mattress. [7]

Based upon a review of the undisputed record, especially the DHO's written decision, it is the determination of this Court that the <u>Hill</u> requirement that DHO's determination be supported by some evidence was satisfied.  This petition simply does not assert that this is the type of a case where the record was so devoid of evidence that the findings by the DHO were without support or otherwise arbitrary.  On the contrary, Petitioner used toilet paper to manufacture homemade ear plugs and then retained those items by placing them under his mattress in violation of Code 305.  <u>See</u> <u>id</u>.  The petition for writ of habeas corpus will be denied.  An appropriate Order will enter.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[7] Petitioner acknowledges that UNICOR issued ear plugs were made available to him.  It is also noted that there is no argument by Fenner that the sanctions imposed were not within the range of sanctions which could be imposed for a Code 305 offense.